IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-42168-TJM |
| | ) | |
| DEL-MAUR FARMS, INC., | ) | CH. 12 |
| | ) | |
| Debtor(s). | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on July 6, 2011, regarding Fil. #48, Objection to Claim No. 2 of CoBank Farm Credit Leasing Services Corp., filed by the debtor, and Fil. #52, Resistance to Objection to Claim filed by CoBank Farm Credit Leasing Services Corp. John Hahn appeared for the debtor and Trev E. Peterson appeared for CoBank Farm Credit Leasing Services Corp.

This matter is before the Court upon the Objection to Claim of CoBank Farm Credit Leasing Services Corp., Claim No. 2. The objection asserts that the agreement between the parties in the form of a lease of personal property is not truly a lease but, instead, it is a disguised purchase agreement and security interest. The agreement is attached to the resistance filed by the claimant at Fil. #52. The parties have agreed, on the record, that this matter could be presented as a contested matter by motion and resistance, rather than as an adversary proceeding. The objection is sustained because I conclude that the agreement between the parties constitutes a secured transaction and not a lease.

The family farm corporation is eligible for Chapter 12 relief. In December of 2007, it entered into an agreement with the claimant, which agreement was in the form of a lease, and which provided that the debtor would make 60 monthly installment payments of $1,206.41 for use of a Grow Master pig scaling and sorting system ("Grow Master"). The agreement also provided an option for the debtor to purchase the Grow Master at the end of the 60-month term for $6,584.40. Schedule A of the agreement shows the original cost, and fair market value at the initiation of the agreement, to be $65,843.99. The purchase option is equal to 10% of that amount.

The agreement provides that the debtor's obligation to pay all rentals and perform all other obligations is irrevocable. At page 6, paragraph 26, the agreement provides:

> NON-CANCELABLE LEASE/OBLIGATIONS UNCONDITIONAL/WAIVER. THIS LEASE CANNOT BE CANCELLED OR TERMINATED EXCEPT AS EXPRESSLY PROVIDED HEREIN. LESSEE HEREBY AGREES THAT LESSEE'S OBLIGATION TO PAY ALL RENTALS AND PERFORM ALL OTHER OBLIGATIONS HEREUNDER SHALL BE ABSOLUTE, IRREVOCABLE, UNCONDITIONAL AND INDEPENDENT AND SHALL BE PAID AND PERFORMED WITHOUT ABATEMENT; DEDUCTION OR OFFSET OF ANY KIND OR NATURE WHATSOEVER.

Schedule A includes an amendment to paragraph 23 of the original agreement. The amendment to paragraph 23 reiterates the right of the debtor to exercise a purchase option at the end of the scheduled lease term, just as was authorized in the original paragraph 23, but it specifically refers to the option purchase price of $6,584.40 listed in Schedule A. Additionally, the amended paragraph 23 provides:

> In the event Lessee does not exercise the option to purchase the Equipment in accordance with the terms and conditions set forth in this Paragraph 23, the Lease shall automatically, without further action on the part of the Lessor or Lessee, be renewed for an additional term, as described above ("Renewal Lease Term") and projected rental amount as described above ("Projected Renewal Rental Amount") . . . .

The "Projected Renewal Rental Amount" is listed in Schedule A as $579.14 per month for a period of twelve months. Amended paragraph 23 then provides:

> Upon expiration of the Renewal Lease Term, Lessee shall return the Equipment to Lessor in accordance with the terms of the Lease applicable to the Equipment, or . . . Lessee may purchase the Equipment, AS-IS-WHERE-IS, for an amount equal to its then fair market value.

Paragraph 33 of the lease provides that if the parties cannot agree on fair market value, then fair market value shall be determined by an appraisal process.

As stated by retired Judge Minahan in In re Super Feeders, Inc., 236 B.R. 267, 269 (Bankr. D. Neb. 1999), the question is whether the agreement constitutes a lease covered in bankruptcy by 11 U.S.C. § 365 or, alternatively, whether the agreement simply provides for the sale of the equipment with the seller retaining a security interest to secure the unpaid purchase price. If the agreement constitutes a secured transaction and not a lease, the claimant is not entitled to the special, preferential treatment accorded a lessor under § 365.

Whether an agreement constitutes a security agreement or lease is determined under applicable state law. Id. (citations omitted).

The agreement states that it is to be governed by Minnesota state law. The applicable Minnesota statute is § 336.1-203, Lease Distinguished from Security Interest. The Minnesota variant of UCC §1-203 contains the same text as the Nebraska UCC § 1-203. The parties have briefed this matter with references to the Nebraska statute and, therefore, since the text of both statutes is the same, I will refer to the Nebraska statutory provision in this opinion.

Nebraska UCC 1-203, entitled "Lease Distinguished from Security Interest" provides, in relevant part,

> (a) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
>
> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>     (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;
>     (2) the lessee is bound to renew the lease for the remaining economic life of the goods;

(3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or

(4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

The parties agree that by the terms of the lease the debtor is required to make the rental payments for the term of the lease and the lease is not subject to termination by the debtor. Therefore, if any one of the four additional provisions cited above are contained in the lease, the document is not a lease but is a security interest.

The agreement does not state what the remaining economic life would be. Therefore, subparagraph (b)(1) is not applicable.

Subparagraph (b)(2) is not applicable because the debtor is not required by the agreement to renew the lease for the remaining economic life of the goods and is not bound to become the owner of the goods.

Subparagraph (b)(3) is not applicable because there is no option to renew the lease for the remaining economic life.

Only if (b)(4) is applicable can this agreement be deemed a security interest rather than a lease. The agreement provides an option to purchase at the end of the scheduled term of 60 months for an amount equal to 10% of the original fair market value/purchase price of the equipment. That amount is specifically set at $6,584.40, the original purchase price having been $65,843.99. If the purchase option is not exercised, the amended paragraph 23 provides for an automatic renewal of the lease for a one-year period. The required payment by the debtor for that one-year renewal is $6,949.68, payable at the monthly rate of $579.14 for twelve months. The total renewal payments exceed the purchase option by $365.28. In addition, if the renewal period goes into effect, at its expiration, the debtor either loses the equipment or may purchase it at fair market value determined by the process explained in paragraph 33 of the agreement.

In other words, if the debtor does not exercise the purchase option at the end of the scheduled term for $6,584.40, the debtor has the privilege of paying $365.28 more than that over the next year and either losing possession of the equipment or having the opportunity to purchase the equipment at fair market value. That means debtor would be paying in excess of the amount it would pay if it exercised the purchase option at the end of the scheduled term.

The question then becomes whether the purchase option amount at the end of the scheduled term is "nominal additional consideration" as mentioned in subparagraph (b)(4) of § 1-203 of the Nebraska UCC. Subsection (d) of 1-203 provides guidance for determining whether additional consideration is "nominal":

(d) Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised. Additional consideration is not nominal if:
(1) when the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal

    determined at the time the option is to be performed; or
        (2) when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

Establishing nominality where there is a purchase option price and cost associated with performance if the option is not exercised requires a comparison of the option purchase price with the reasonably predictable costs of performance under the lease if the purchase option is not exercised. In re Gateway Ethanol, L.L.C., 415 B.R. 486, 500 (Bankr. D. Kan. 2009). The court must look at whether the debtor has the opportunity to buy the equipment for no additional consideration upon compliance with the lease agreement, or, in other words, at the end of the entire agreement. Brankle Brokerage & Leasing, Inc. v. Volvo Fin'l Servs. (In re Brankle Brokerage & Leasing, Inc.), 394 B.R. 906, 912 (Bankr. N.D. Ind. 2008).

Between the extremes, courts revert to earlier cases to evaluate nominality under more median circumstances. In re Ecco Drilling Co., Ltd., 390 B.R. 221, 229 (Bankr. E.D. Tex. 2008). In the Super Feeders case, which was decided in 1999 and which required Judge Minahan to interpret § 1-201(37) of the Nebraska UCC, the substantively identical predecessor to the current § 1-203, Judge Minahan found that a fixed option price of 5% of the original purchase price indicated nominal additional consideration. He cited Kimco Leasing, Inc. v. State Bd. of Tax Comm'rs, 656 N.E.2d 1208, 1215 (Ind. T.C. 1995), for the proposition that "[u]nder the 'economic realities' test, courts consider the relationship of the purchase option price to the original purchase or list price." In Kimco, it was determined that a purchase option price less than 25% of the original purchase constituted evidence of a security interest.

Super Feeders also cited Wakefield v. Wakefield, 217 B.R. 967, 970 (Bankr. M.D. Ga. 1998), where an option price of 10% of the rental payment was considered significant in determining that the option price was nominal. Super Feeders also cited Orix Credit Alliance, Inc. v. Pappas, 946 F.2d 1258, 1261-62 (7th Cir. 1991), where an option price which equaled 12% of the rental payments was found to be nominal. See also Ecco Drilling, 390 B.R. 221 (15% purchase price was nominal); In re Bailey, 326 B.R. 156 (Bankr. W.D. Ark. 2005) (13-14% purchase option is nominal); In re Buehne Farms, Inc., 321 B.R. 239 (Bankr. S.D. Ill. 2005) (6% purchase price is nominal). If the only economically sensible decision is for the lessee to exercise the purchase option, the additional consideration is considered nominal. C & J Vantage Leasing Co. v. Wolfe, 795 N.W.2d 65, 75 (Iowa 2011) (citing PSINet, Inc. v. Cisco Sys. Capital Corp. (In re PSINet, Inc.), 271 B.R. 1, 45 (Bankr. S.D.N.Y. 2001)). The agreement in this case provided that the option price is 9% of the total rental payments of $72,384.60.

A purchase option which is equal to 10% of the original purchase price or 9% of the total rental payments is "nominal additional consideration" as that term is used under the statute, whether measuring by the percentage of purchase price or percentage of total rents, or considering the purchase option under subsection (d) of UCC § 1-203. If the debtor fails to exercise such option, the lease renews for an amount in excess of the option price, leaving the debtor with the opportunity to lose the equipment or to pay an undetermined additional "fair market value" to retain the equipment.

Based upon the language of the agreement and Nebraska UCC § 1-203, I find that the agreement creates a security interest and is not a true lease.

      IT IS ORDERED that the Objection to Claim of CoBank Farm Credit Leasing Services Corp., Fil. #48, is sustained.

      DATED:      July 14, 2011

                                          BY THE COURT:

                                          /s/ Timothy J. Mahoney
                                          United States Bankruptcy Judge

Notice given by the Court to:
  *John Hahn
  Trev E. Peterson
  U.S. Trustee

* Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.